IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MELISSA ANN LITTLE**,                                    Civil Case No. 10-21-KI

                    Plaintiff,

                                                          OPINION AND ORDER

        vs.

**COMMISSIONER** of Social Security,

                    Defendant.

        Alan Stuart Graf, P.C.
        P. O. box 98
        Summertown, Tennessee  38283

                Attorney for Plaintiff

        Dwight C. Holton
        United States Attorney
        District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Benjamin J. Groebner
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Melissa Little brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's applications for supplemental security income benefits ("SSI")

and child's insurance benefits based on disability.  I reverse the decision of the Commissioner

and remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

Page 2 - OPINION AND ORDER

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d)

and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.  If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past.  If the claimant is able

to perform work she performed in the past, a finding of "not disabled" is made and disability

benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the

fifth and final step to determine if the claimant can perform other work in the national economy

in light of his age, education, and work experience.  The burden shifts to the Commissioner to

show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.

The claimant is entitled to disability benefits only if he is not able to perform other work.  20

C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2004) (internal citations omitted).

### THE ALJ'S DECISION

Little filed three prior unsuccessful applications for SSI.  Relying on the law concerning both SSI and child's insurance benefits based on disability, the ALJ framed the issue as deciding whether Little was disabled as of April 15, 1989.

The ALJ found that Little had severe impairments of a seizure disorder, asthma, depression, social phobia, and a learning disorder.  The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  After considering the medical record, the ALJ concluded that Little had no exertional limits on her ability to perform work; that she was restricted from climbing ladders, ropes, and scaffolding; that she should avoid driving hazards, heights, dangerous machinery, and exposure to fumes, dust, and other respiratory irritants; and that she could perform unskilled work tasks with limited interaction with the public.  The ALJ found that Little could not perform her past work but, based on the Medical-Vocational Guidelines, was not disabled under the Act.

### FACTS

Little, who was 37 at the time of the ALJ's decision, claims to be disabled from a learning disorder, social phobia, anxiety, depression, and seizures.  She worked briefly as a hotel housekeeper and took the first three weeks of a course to become a certified nurse assistant but did not finish the course.  Little attended special education classes and dropped out after the eighth grade.  She abused alcohol and methamphetamine for approximately ten years but has been clean and sober since 1998.

Page 5 - OPINION AND ORDER

Little lives with the father of her daughter, a young girl with autism.  Little cares for her daughter and the pet dogs, does housework, prepares meals, plays on the computer for 90 minutes a day, and talks to friends on the phone.  She needs reminders to bathe, eat, take her medicine, and care for her animals.  Little is afraid to drive or leave the house alone.  People visit her at home.  Little complains of difficulty understanding and remembering instructions.  Her partner does most of the shopping, although at times Little will pick up one or two items alone.

Little has seizures about once a week during which she "space[s] off" for a couple of minutes.  Tr. 723.  More severe seizures, which occur infrequently, require Little to lie down for several hours to recover.  Her fatigue causes her to take a nap at noon every day for two to three hours.

## DISCUSSION

I.    Little's Subjective Complaints

Little is concerned that the ALJ's comparison of his personal health issues to Little's symptoms discounts the seriousness of her complaints.  She is concerned about the ALJ's ability to reach a fair conclusion in her case.

The ALJ engaged in a lot of banter with Little during the hearing, including talking about the WWE wrestling champion who appeared on television the night before, recommending a home remedy for acid reflux, and comparing X-ray results from his scoliosis with Little's condition.  I agree that the ALJ's professional manner could be improved, but his tone was friendly and may have put Little, who has a documented history of fear of strangers, more at ease.  I see no evidence of bias or inability to be fair.  See Rollins v. Massanari, 261 F.3d 853, 857-58 (9th Cir. 2001) (presumption of non-bias can be rebutted if "the ALJ's behavior, in the context of

the whole case, was so extreme as to display clear inability to render fair judgment") (internal quotation omitted).

Little next contends that the ALJ failed to state clear and convincing reasons to discredit her testimony on the severity of her symptoms.

The Commissioner argues the ALJ correctly found that Little did not receive the type of consistent treatment that would be expected for her alleged disabling symptoms, and Little engaged in relatively normal activities of daily living. The Commissioner contends that these are clear and convincing reasons to find Little not entirely credible.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006).

After reviewing the medical record, the ALJ found: (1) Little was not under frequent monitoring for her allegedly disabling medical issues; (2) her seizures were very short periods of spacing out which seldom required Little to lie down to recover; (3) Little's daily activities include seeing to her personal hygiene, housework, caring for her young daughter, cleaning, cooking, laundry, contact with friends and family members, television, video and computer games, and driving; (4) the record was largely devoid of objective findings of debilitating physical problems; and (5) Little's emotional problems have improved since she has been clean and sober.

The record supports the ALJ's analysis concerning Little's infrequent medical monitoring, few objective findings of debilitating physical problems, and improvement in emotional health since remaining clean and sober. Although the ALJ cannot reject subjective testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the symptom and its disabling effects. <u>Rollins</u>, 261 F.3d at 857. The ALJ's analysis, however, is undercut by the fact that Little takes prescription medication for seizures and psychological problems.

The ALJ was also correct in noting that Little's seizures usually lasted only a few minutes and did not require a recovery period. This is a clear and convincing reason to partially discredit Little's symptom testimony. I have a concern, however, about the effect of seizures of this nature on the ability of Little to perform work in a competitive setting. The ALJ did not take vocational expert testimony on this issue. I address this issue below.

Page 8 - OPINION AND ORDER

Finally, the ALJ's summary of Little's activities of daily living is supported by substantial evidence in the record provided by Little. The difficulties Little has in performing the activities of daily living were evident in the lay testimony and will be discussed below.

On the whole, I conclude that the ALJ gave clear and convincing reasons for partially discrediting Little's subjective symptom testimony.

II.    Development of the Record on Little's Mental Impairments

Little argues that the ALJ failed to develop adequately the record on her mental impairments in order to make a determination of whether she met or equaled Listing 12.05C, which states:

>    12.05  Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
>    The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>    . . . .
>
>    C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

Little claims that no examiner administered an IQ test to her and her results on the Woodcock-Johnson III Test of Achievement correlate to an IQ in the range of 66-70, which is sufficient to meet Listing 12.05C in light of her other impairments.

The Commissioner contends that the ALJ did not fail to develop the record because the medical and testimonial evidence is neither ambiguous nor inadequate and shows Little's overall cognitive ability to be within the low-average range.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted).  The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests.

The ALJ must supplement the record if:  (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  The supplementation can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented.  Tonapetyan, 242 F.3d at 1150.

Little noted on her Disability Report questionnaire that she had an IQ of 70, Tr. 62, which would be low enough to meet Listing 12.05C, if she also had another impairment imposing a significant work-related limitation of function.  The ALJ did not order IQ testing.  Dr. McDow, a learning disabilities specialist, administered the Woodcock-Johnson battery of tests and assessed Little's cognitive ability as within the low-average range, in the tenth percentile.  Dr. McDow diagnosed Little with a learning disorder, not otherwise specified.  Little has a seizure disorder and psychological problems which could rise to the level of impairments imposing significant work-related limitation of function.  I consider the evidence sufficiently ambiguous to trigger the ALJ's requirement to supplement the record by ordering an IQ test.

III.    <u>Physician Opinions</u>

A.    <u>Dr. Bill Hennings</u>

Little contends that even though the ALJ found Dr. Hennings' findings persuasive, the ALJ erred by ignoring some of the findings:  (1) limiting Little to occasional contact with coworkers; and (2) a moderate limitation in the "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness."  Tr. 318.  Little also maintains that some unskilled jobs require the ability to carry out detailed but uninvolved written or oral instructions, something she cannot do.

The Commissioner argues that an ALJ does not reject a medical opinion because he does not adopt specific findings verbatim.  According to the Commissioner, the two limitations quoted above are not separate.  Instead, Dr. Hennings translated his opinion of Little's limitation concerning neatness and cleanliness, as marked in section I of the mental residual functional capacity assessment ("MRFCA") form, into a limitation of occasional contact with public and coworkers, as marked in section III of the MRFCA form.  The Commissioner then maintains that the ALJ's limitation of Little to unskilled work with limited interaction with the public incorporates Dr. Hennings' additional findings because of the definition of unskilled work.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  <u>Id.</u> (treating physician); <u>Widmark v. Barnhart</u>,

454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.

On March 8, 2005, Dr. Hennings completed a MRFCA form in which he noted in the Summary Conclusions section that Little was moderately limited in several areas, including the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to interact appropriately with the general public, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to be aware of normal hazards and take appropriate precautions, and the ability to travel in unfamiliar places.  In the Functional Capacity Assessment section, which explains the summary conclusions in narrative form, Dr. Hennings wrote:

> A&B)  HX of special education and 8th grade education, able to understand and follow simple commands, thus able to sustain work that is simple and routine.
>
> C)  Occ[asional] contact with public and coworkers
>
> D)  Hx of DAA [drug/alcohol abuse] use thus should avoid conce [sic] hazard in event of relapse.  Time to adjust to changes in work situation.  Clt has anxiety with driving and does drive.

Tr. 319.

The ALJ concluded that Little had no exertional limits on her ability to perform work, that she was restricted from certain hazards, and that she required unskilled work tasks with limited interaction with the public.  The ALJ did not discount Dr. Hennings' opinion in any way.

Page 12 - OPINION AND ORDER

I agree with the Commissioner that Dr. Hennings' moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness folds into Dr. Hennings' functional capacity assessment that Little is limited to occasional contact with public and coworkers.  Thus, the ALJ did not err by failing to address behavior and cleanliness as separate issues.

The ALJ did not limit Little's interaction with coworkers even though Dr. Hennings, in the functional capacity assessment, limited Little to only occasional contact with coworkers.

The Social Security Rulings state:

The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

. . . .

Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work.  These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for person[s] with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.

SSR 85-15.

The Ruling notes that unskilled jobs ordinarily involve dealing primarily with objects, and not people, but do require the ability to respond appropriately to supervision and coworkers. The ALJ neither added a limitation of only occasional contact with coworkers nor explained why he did not adopt that part of Dr. Hennings' opinion.  I do not agree with the Commissioner that the ALJ's residual functional capacity limitation on the public is consistent with a limitation to

occasional contact with coworkers.  Some jobs have no public interaction but extensive

interaction with coworkers.  The ALJ erred when he failed to handle the issue in any fashion.

      B.     Dr. Sandra McDow

      Little interprets Dr. McDow's findings to mean she has a limitation in remembering

simple instructions.  Little argues the ALJ's finding that she could perform unskilled work does

not take this limitation into account.

      The Commissioner contends that Dr. McDow's findings do not mean that Little cannot

understand, carry out, and remember simple instructions.

      In February 2005, Dr. Sandra McDow, Ph.D., evaluated Little for learning disabilities.

Dr. McDow diagnosed Little with a learning disorder, not otherwise specified, and found that she

had some cognitive and academic weaknesses which seemed to render her functionally illiterate.

Dr. McDow found Little "much more functional in areas not contingent upon academic basic

skills such as verbal and nonverbal reasoning, processing oral language and oral expression."

Tr. 254.  Her relative weaknesses were in short-term auditory memory, arithmetic fluency,

arithmetic calculation, and fund of school-learned information.  Her relative strengths were in

non-verbal reasoning, verbal reasoning, visual processing (non-language), listening

comprehension, and reading comprehension.  Dr. McDow also stated that Little should be given

"written instructions in short, one-step parts.  For complex tasks, write out the process in simple,

one-step at a time order, accompanied by graphics or illustrations and recorded oral directions."

Tr. 255.

      As quoted above in SSR 85-15, unskilled work requires the ability "to understand, carry

out, and remember simple instructions."  This is not contradicted by Dr. McDow's opinion,

which expressly stated that Little could follow simple one-step instructions.  The ALJ did not err

by failing to add additional limitations to Little's residual functional capacity based on

Dr. McDow's opinion.

IV.     Lay Witness Testimony

Little notes that the ALJ made no mention of statements from two lay witnesses, her

niece, Daniel Craford, and her partner, Matthew Strober.  Little argues that the error is not

harmless because crediting their statements could have changed the ALJ's disability

determination.  Little also claims that the Commissioner cannot rely on a reason which the ALJ

did not originally state.

The Commissioner responds that the error is harmless because no reasonable ALJ could

find Little disabled based on fully crediting the lay witness statements.  The Commissioner

characterizes the statements as internally inconsistent and contends the statements do not

describe limitations that are inconsistent with Little's residual functional capacity.

In January 2005, Strober reported that Little takes care of their daughter with his help,

cleans some, plays on the computer, watches television, cooks simple meals, does laundry, talks

to friends on the telephone, and takes care of the pets.  On the other hand, Strober takes care of

the finances, reminds Little to take care of her personal needs when she is depressed, reminds her

to take her medicine, and does all the shopping.  Little tires and forgets easily, is unable to keep a

schedule, is afraid to go out alone except to let the dogs out, skips steps in written instructions,

can follow spoken instructions at times but gets overwhelmed easily, and will no longer attend

church with Strober because it made her shake visibly.

In April 2006, Craford reported that Little has trouble sleeping at night and staying awake during the day, needs reminders to take medicine, does not drive because it causes anxiety, does not get out much, has trouble following written instructions, and cannot pay bills, count change, handle a savings account, or use a checkbook. Craford also reported that Little takes care of her daughter, cleans the house, prepares meals, does laundry, watches television, plays video and computer games, talks on the phone, and goes outside several times a day.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056.

Although both Strober and Craford give examples of functionality Little possesses, both lay witnesses also describe reasonably severe limitations, including the inability to handle finances at all, fear of leaving the home alone, and the need for many reminders to take care of personal needs. I cannot confidently conclude that no reasonable ALJ could have found Little disabled after crediting the lay testimony. Accordingly, the ALJ's error in failing to discuss testimony from the two lay witnesses is not harmless.

V.    Use of Medical-Vocational Guidelines

Little contends that the ALJ erred by relying solely on the Medical-Vocational Guidelines (also known as the "grids") without also receiving testimony from a vocational expert. She

claims that her learning disorder, seizure disorder, depression, lack of work experience, limited

cognitive skills, and functional illiteracy are nonexertional limitations that could erode the

occupational base sufficiently that the ALJ cannot rely on the grids alone.

I decline to address this contention because other errors committed by the ALJ will likely

result in a change to Little's residual functional capacity and require vocational expert testimony.

VI.    Reopening Little's Prior May 16, 2001 SSI Application and Child Disability Benefits

Application

Little claims that the ALJ reviewed the merits of medical reports dating from the prior

adjudicated period.  She argues that the ALJ thus reopened her prior application of May 16, 2001

and de facto amended her onset date to the date of Dr. Daryl Birney's medical opinion of

January 29, 2002.

The Commissioner argues that the ALJ expressly applied res judicata and refused to

reopen the prior determinations.

I agree with the Commissioner.  The ALJ stated:  "To the extent that this decision

discusses evidence regarding any earlier determinations, it is being done for historical purposes

or in relation to the current application only.  No intent to reopen the prior determinations should

be inferred from such discussion, if any."  Tr. 18.  I take the ALJ at his word.

VII.   Remedy

The court has the discretion to remand the case for additional evidence and findings or to

award benefits.  McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  The court

should credit evidence and immediately award benefits if the ALJ failed to provide legally

sufficient reasons for rejecting the evidence, there are no issues to be resolved before a

determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (recognizing split within the circuit on whether the rule is mandatory or discretionary but not resolving the conflict). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Connett, 340 F.3d at 876. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

I am disturbed that the ALJ did not have an IQ test administered to Little to properly consider whether she falls within Listing 12.05C. I see no reason to refrain from crediting the lay witness testimony of Strober and Craford. It is clear based on their testimony that Little has a great deal of difficulty in caring for herself without significant assistance, much less leaving her home and going to work. I conclude that this is the unusual case in which it is clear that the claimant cannot perform gainful employment. Thus, I remand the case for a finding of disability.

Page 18 - OPINION AND ORDER

**CONCLUSION**

The decision of the Commissioner is reversed.  The case is remanded for a finding of

disability.

IT IS SO ORDERED.

Dated this _____21st_____ day of January, 2011.


    ___/s/ Garr M. King_____
    Garr M. King
    United States District Judge